**UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF RHODE ISLAND**


OCEAN STATE POWER LLC


                    v.                          C.A. No. 15-046-ML


TOWN OF BURRILLVILLE, by and through
its Finance Director John P. Mainville, and
PETER KILMARTIN in his capacity as
Attorney General for the State of Rhode Island


**MEMORANDUM AND ORDER**

The plaintiff in this action, Ocean State Power LLC (together with its corporate predecessors, "OSP") is a Rhode Island limited liability company which owns and operates two power plants in the Town of Burrillville (the "Town")[1]. OSP has filed several tax assessment appeals against the Town, which are currently pending in Rhode Island state courts. According to OSP's complaint (the "Complaint"), the Town, in response to OSP's first tax assessment appeal, obtained special legislation from the State of Rhode Island that limits pre-judgment interest related to tax assessment appeals

_____

[1]
    In addition to the Town, which is a Rhode Island municipality, State Attorney General Peter Kilmartin is named as a defendant because OSP challenges the constitutionality of a Rhode Island State statute. Complaint ¶ 4.

against the Town[2] to $100,000 per appeal. OSP seeks a declaratory judgment that R.I. Gen. Laws §44-5-31.1 (the "Statute") is unconstitutional because it violates OSP's equal protection and substantive due process rights under the United States Constitution and the Rhode Island Constitution.  Complaint ¶ 1. In essence, OSP seeks injunctive relief against a possible application of the Statute, should OSP prevail in the still pending tax assessment appeals. Id.

The matter is before the Court on the Town's motion to dismiss the Complaint pursuant to Rules 12(b)(1) and 12(b)6) of the Federal Rules of Civil Procedure. The Town submits that (1) OSP's claim is premature and not ripe for determination; and (2) the Statute at issue in this action is (a) constitutional and valid, and (b) applicable to all municipalities and taxpayers in Rhode Island.

## I.   Factual and Procedural Summary

The parties agree, for the most part, on the underlying facts of this litigation. OSP owns and operates two gas-fired combined cycle power plants ("OSP I" and "OSP II," together, the "Power Plants") and a holding pond (the "Holding Pond," together with OSP I and OSP II, the "Tangible Personal Property"), which is used for the operation of the Power Plants. The Tangible Personal Property

---

[2]

Although the operative language of Section 44-5-31.1 does not specifically reference the Town and/or OSP, OSP maintains that the Statute "does not apply to any other taxpayer in Rhode Island." Complaint ¶ 44.

is located on two tax parcels (the "Real Estate," totaling approximately 62 acres) within the Town limits. Complaint ¶¶ 1, 10-15. In 1988, the Town and OSP entered into a Tax Treaty and Agreement (the "Tax Treaty"), pursuant to which OSP, without the benefit of annual assessments of its property values, paid fixed annual taxes to the Town. Complaint ¶ 16. OSP agreed to pay the Town $73 million in taxes over a twenty-year period, ranging from $2.5 million per year for years 1-4, to $5 million per year for years 19-20 (an annual average of $3.65 million). Id.

In 1995, the Town and OSP entered into an amendment to the Tax Treaty, pursuant to which OSP agreed to pay fixed taxes of $850,000 over a twenty-year period for the Holding Pond, ranging from $0 for the first four years to $67,462 annually for years 19 and 20 (an annual average of $42,500). Complaint ¶ 17. According to OSP, the Town did not put OSP's properties on its tax rolls during the years the Tax Treaty was in effect; rather it kept the OSP payments separate from that of other property tax payers. Complaint ¶ 19. The Town appears to acknowledge that it first placed OSP on its tax rolls in 2011, after the Tax Treaty had expired and no new agreement was reached between the parties. Town's Mot. Dismiss at 1; Complaint ¶ 22.

In 2011, the Town assessed OSP's Real Property and Tangible Personal Property at a total value of $164,213,039, for which it

3

levied $1,804,167[3] in taxes. Complaint ¶ 28. According to OSP, the Town's valuation amounted to more than twice the value assessed by OSP's own expert ($82,000,000). Id. Similarly, in 2012, the Town assessed OSP's properties at $165,564,313 (compared to OSP's valuation of $104,000,000), resulting in taxes of $2,677,174. Complaint ¶ 29. In 2013, the Town's assessment was $189,545,124 (compared to OSP's valuation of $92,000,000), resulting in taxes of $3,521,748. Complaint ¶ 30. In 2014, the Town's assessment was $184,787,293, resulting in taxes of $3,488,784.[4] Complaint ¶ 31.

According to the Complaint, and undisputed by the Town, OSP promptly made all tax payments based on the Town's assessments. Complaint ¶ 32. For tax years 2011 through 2014, OSP paid a total of $11,491,873 in taxes, based on the Town's assessments. OSP also filed four separate lawsuits in Rhode Island state court to appeal the Town's assessments for  those tax years, in which OSP sought "the abatement of over $5.5 million, plus the recovery of all interest and costs." Complaint ¶¶ 33, 34; OSP's Obj. to Mot. Dismiss at 5. In other words, based on its own valuations of the OSP properties (which valued the OSP properties at about half of the assessments made by the Town), OSP seeks abatement of nearly

---

[3]

Because the Tax Treaty had different expiration dates regarding OSP II and the Holding Pond, those properties were assessed at a reduced value for 2011. Complaint at ¶ 24.

[4]

At the time it filed the Complaint, OSP had not yet submitted its own valuation.

half the taxes it has paid during those four years.

According to the Complaint, OSP alleges that the Town has "repeatedly and forcefully objected to the lawsuit regarding Tax Year 2011" (filed on April 10, 2012). Complaint ¶ 35. Nevertheless, that case was assigned to the trial calendar and trial is scheduled to commence on December 7, 2015. OSP's Obj. at  6.  OSP's lawsuit regarding Tax Year 2012, filed on April 25, 2013, was dismissed by the Rhode Island Superior Court on the Town's motion for summary judgment, on the ground that OSP did not timely comply with R.I. Gen. Laws § 44-5-26 in filing its administrative appeal to the tax assessor. OSP's appeal of that determination is currently pending in the Rhode Island Supreme Court. Complaint ¶ 36.

OSP also alleges that the Town has refused to mediate OSP's tax assessment appeals. OSP suggests that, because the Town believes that the Statute limits the Town's exposure to pre-judgment interest payments to $100,000, the Statute chills the purpose of Rhode Island's pre-judgment interest statute, R.I. Gen. Laws § 9-21-10: *i.e.*, to facilitate the settlement of disputes. Complaint ¶ 38.

According to OSP, following the filing of OSP's first assessment appeal in April 2012, the Town began efforts to limit pre-judgment interest in tax assessment appeals. Complaint ¶ 39. On July 17, 2013, "at Burrillville's request," the Rhode Island State General Assembly enacted R.I. Gen. Laws § 44-5-31.1. Complaint ¶

5

43. R.I. Gen. Laws § 44-5-31.1, titled "Burrillville-Judgment," provides as follows:

> Notwithstanding any provision contained in § 9-21-10[5], in **any** tax assessment appeal or civil action brought pursuant to the applicable provisions of chapter 44-5[6] **in which a verdict is rendered or a decision made for pecuniary damages,** the amount of interest which shall be included in addition to the judgment entered therein shall not exceed the sum of one hundred thousand dollars ($100,000) R.I. Gen. Laws 44-5-31.1 (Emphases added).

On February 12, 2015, OSP filed a declaratory judgment action in this Court in order to (1) have the Statute declared unconstitutional on the grounds that it violates OSP's equal protection and substantive due process rights, and (2) preclude application of the Statute in the event OSP prevails in one or more of the tax appeals currently pending against the Town in Rhode Island state courts. Complaint (Dkt. No. 1). On May 19, 2015, the

---

[5]

R.I. Gen. Laws § 9-21-10(a) provides, in pertinent part, that "[i]n any civil action in which a verdict is rendered or a decision made for pecuniary damages, there shall be added by the clerk of the court to the amount of damages interest at the rate of twelve percent (12%) per annum thereon from the date the cause of action accrued, which shall be included in the judgment entered therein. Post-judgment interest shall be calculated at the rate of twelve percent (12%) per annum and accrue on both the principal amount of the judgment and the prejudgment interest entered therein."

[6]

Title 44 of Chapter 5 of the Rhode Island General Laws relates to the levy and assessment of local taxes. R.I. Gen. Laws § 44-5-30 provides, in pertinent part, that taxpayers who prevail in tax abatement cases shall be paid "the sum by which he or she has been so overtaxed, or illegally taxed, plus the amount of any penalty paid on the tax, with interest from the date on which the tax and penalty were paid and costs, which judgment shall be paid to the petitioner by the city or town treasurer out of the treasury."

Town filed a motion to dismiss the Complaint (Dkt. No. 15), to which OSP filed an objection on June 18, 2015 (Dkt. No. 18). The Town responded with a reply on July 15, 2015 (Dkt. No. 20).

## II. Standards of Review

### A.   Motion to Dismiss

The dismissal of a complaint is governed by Rule 12 of the Federal Rules of Civil Procedure. The Court may dismiss a complaint *inter alia*, for lack of subject-matter jurisdiction, Fed. R. Civ. P. 12(b)(1), or for failure to state a claim upon which relief can be granted, Fed. R. Civ. P. 12(b)(6). The standard of review under Fed. R. Civ. P. 12(b)(1) "is similar to that accorded a dismissal for failure to state a claim pursuant to Fed. R. Civ. P. 12(b)(6)." Murphy v. United States, 45 F.3d 520, 522 (1st Cir. 1995) *cert. denied*, 515 U.S. 1144, 115 S.Ct. 2581, 132 L.Ed.2d 831 (1995)(citing Scheuer v. Rhodes, 416 U.S. 232, 236, 94 S.Ct. 1683, 1686, 40 L.Ed.2d 90 (1974)).

It is well established that, "when a defendant moves to dismiss for lack of federal subject matter jurisdiction, 'the party invoking the jurisdiction of a federal court carries the burden of proving its existence.'" Johansen v. United States, 506 F.3d 65, 68 (1st Cir. 2007)(quoting Murphy v. United States, 45 F.3d at 522). In determining a motion to dismiss a case for lack of subject matter jurisdiction, the Court "give[s] weight to the well-pleaded factual averments in the operative pleading (here, the

petitioners' amended complaint) and indulge[s] every reasonable inference in the pleader's favor." Aguilar v. United States Immigration and Customs Enforcement Div. of Dept. of Homeland Security, 510 F.3d. 1, 8 (1st Cir. 2007); Muñiz-Rivera v. United States, 326 F.3d 8, 11 (1st Cir.2003). Accordingly, the Court must "construe the complaint liberally, treat all well-pleaded facts as true, and indulge all reasonable inferences in favor of the plaintiff." Aversa v. United States, 99 F.3d 1200, 1210 (1st Cir.1996). However, a "plaintiff cannot rest a jurisdictional basis merely on 'unsupported conclusions or interpretations of law." Johansen v. United States, 506 F.3d at 68 (quoting Murphy, 45 F.3d at 522 (quoting Washington Legal Found. v. Massachusetts Bar Found., 993 F.2d 962, 971 (1st Cir.1993)).

Similarly, in deciding a motion for dismissal pursuant to Fed. R. Civ. P. 12(b)(6), the Court accepts "all well-pleaded facts as true and draw[s] all reasonable inferences" in favor of the party objecting to the dismissal. Carreiro v. Rhodes Gill and Co., Ltd., 68 F.3d 1443, 1446 (1st Cir. 1995)(citing Washington Legal Found. v. Massachusetts Bar Found., 993 F.2d 962, 971 (1st Cir.1993)). However, "[t]hreadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." Ashcroft v. Iqbal, 556 U.S. 662, 678, 129 S.Ct. 1937, 173 L.Ed.2d 868 (2009); Bell Atl. Corp. v. Twombly, 550 U.S. 544, 555, 127 S.Ct. 1955, 167 L.Ed.2d 929 (2007)(noting that the court is "not

8

bound to accept as true a legal conclusion couched as a factual allegation")(internal citation and quotation marks omitted).

B.   The Declaratory Judgment Act and Ripeness

Under the Declaratory Judgment Act ("DJA"), 28 U.S.C. §§ 2201-2202 (1988), a federal court is empowered to grant declaratory relief in a case of actual controversy. Although the DJA provides another means for the resolution of disputes between litigants, it does not itself confer subject matter jurisdiction. Franchise Tax Bd. v. Construction Laborers Vacation Trust, 463 U.S. 1, 15-16, 103 S.Ct. 2841, 2849-50, 77 L.Ed.2d 420 (1983)(noting that the operation of the DJA is "procedural only" and that, although "Congress enlarged the range of remedies available in the federal courts, [it] did not extend their jurisdiction."

Accordingly, is well established that "requests for a declaratory judgment may not be granted unless they arise in a context of a controversy 'ripe' for judicial resolution." Verizon New Eng., Inc. v. IBEW, 651 F.3d 176, 188 (1st Cir. 2011)(quoting Abbott Labs. v. Gardner, 387 U.S. 136, 148-49, 87 S.Ct. 1507, 18 L.Ed.2d 681 (1967), abrogated on other grounds by Califano v. Sanders, 430 U.S. 99, 105, 97 S.Ct. 980, 51 L.Ed.2d 192 (1977). The plain language of the DJA emphasizes the requirement of ripeness. 28 U.S.C. § 2201(a)("In a case of actual controversy within its jurisdiction ... a court of the United States, upon the filing of an appropriate pleading, may declare the rights or other legal

relations of any interested party seeking such declaration, whether or not further relief is or could be sought.")(Emphasis added).

The First Circuit has held that "where challenges are asserted to government actions and ripeness questions arise, a court must consider both 'fitness for review' and 'hardship.'" <u>Verizon New Eng., Inc. v. IBEW</u>, 651 F.3d at 188 (citing <u>Ernst & Young v. Depositors Econ. Prot. Corp.</u>, 45 F.3d 530, 536 (1st Cir.1995)). The "fitness for review" inquiry centers upon "whether the claim involves uncertain and contingent events that may not occur as anticipated or may not occur at all." <u>Ernst & Young v. Depositors Econ. Prot. Corp.</u>, 45 F.3d at 536 (internal quotation marks omitted). As such, the inquiry "involves subsidiary queries concerning finality, definiteness, and the extent to which resolution of the challenge depends upon facts that may not yet be sufficiently developed." <u>Id.</u> (citing <u>W.R. Grace & Co. v. EPA</u>, 959 F.2d 360, 364 (1st Cir.1992)).

Underlying this process is the "institutional awareness that the fitness requirement has a pragmatic aspect: issuing opinions based on speculative facts or a hypothetical record is an aleatory business, at best difficult and often impossible." <u>Ernst & Young v. Depositors Econ. Prot. Corp.</u>, 45 F.3d at 536 (citing <u>Calif. Bankers Ass'n v. Schultz</u>, 416 U.S. 21, 56, 94 S.Ct. 1494, 1515, 39 L.Ed.2d 812 (1974) ("This Court, in the absence of a concrete fact situation in which competing associational and governmental

interests can be weighed, is simply not in a position to determine [the question presented].”))

Although courts may be willing to “decide cases that turn on legal issues not likely to be significantly affected by further factual development,” Ernst & Young v. Depositors Econ. Prot. Corp., 45 F.3d at 536 (citing Pacific Gas & Elec. Co. v. State Energy Resources Conserv. & Dev. Comm'n, 461 U.S. 190, 201, 103 S.Ct. 1713, 1720-21, 75 L.Ed.2d 752 (1983)), a plaintiff’s claim is considered unripe if the claim, “although predominantly legal in character, depends upon future events that may never come to pass, or that may not occur in the form forecasted.” Id. at 537.

In addition, the Court must also “consider the extent to which hardship looms—an inquiry that typically ‘turns upon whether the challenged action creates a “direct and immediate” dilemma for the parties.’” Id. The First Circuit, in line with the majority view on this matter, has held that “both prongs of the test ordinarily must be satisfied in order to establish ripeness,” acknowledging the possibility, however, “that there may be some sort of sliding scale under which, say, a very powerful exhibition of immediate hardship might compensate for questionable fitness (such as a degree of imprecision in the factual circumstances surrounding the case), or vice versa.” Ernst & Young v. Depositors Econ. Prot. Corp., 45 F.3d at 536. In sum, “the greater the hardship, the more likely a court will be to find ripeness.” McInnis-Misenor v. Maine Medical Center,

319 F.3d 63, 70 (1st Cir. 2003).

## III. **The Parties' Positions**

OSP contends that (1) the Statute is unconstitutional and violative of OSP's constitutional rights because OSP "is the only property owner in Rhode Island to which this interest limitation statute applies," Complaint ¶ 1; and (2) in reliance on the Statute's cap on pre-judgment interest, the Town has refused to mediate OSP's tax assessment appeals. OSP also suggests that the Statute's pre-interest limitation has chilled the purpose of Rhode Island's pre-judgment interest statute, R.I. Gen. Laws § 9-21-10.

The Town, on its part, takes the position that OSP's claim is not ripe for review because (1) it is unknown whether OSP will prevail in the tax assessment appeals still pending in Rhode Island state courts; and (2) OSP has failed to show that deferring judicial review will result in imminent hardship. In addition, the Town argues (1) that the Statute is entitled to a presumption of validity and constitutionality; and (2) that the Statute is applicable to all tax assessment appeals in Rhode Island in which a verdict has been rendered or a decision on pecuniary damages has been made.

## IV. **Discussion**

To summarize the situation in which the parties find themselves: The Town, pursuant to a Tax Treaty with OSP, and without providing annual tax value assessments of OSP's properties,

received nearly $74 million from OSP over a twenty year period, averaging approximately $3.7 million per year. After the Tax Treaty expired and the parties were unable to come to a similar agreement, the Town put OSP's properties on its tax rolls, provided annual property value assessments, and taxed OSP's properties based on those assessments. For the years 2011 through 2014, OSP paid the Town $11,491,876 in taxes. Although OSP promptly paid its tax bills, it disagreed with the Town's assessments of OSP's property values and challenged those assessments by filing four separate appeals in Rhode Island state court (where the cases remain pending).

It is generally OSP's contention that its properties should have been assessed at only at about half the value the Town assigned to them. Accordingly, OSP seeks an abatement of about half the taxes it has already paid to the Town. The first of OSP's appeals is scheduled to go to trial later this year. The second of OSP's appeals was dismissed on the Town's motion for summary judgment and is currently on appeal in the Rhode Island Supreme Court. The last two appeals are in the discovery stage and have not yet been scheduled for trial.

In the event OSP prevails in one or more of its appeals, the Statute, if upheld, may preclude OSP from collecting, or being credited with, any pre-judgment interest amounts in excess of $100,000. Whether OSP is entitled to pre-judgment interest greater

than $100,000 depends not only on whether OSP prevails in any of its assessment appeals, but also on the extent the Town's assessment values are reduced. If, however, the Town prevails in its tax assessments of OSP's properties or if the assessments are reduced by only a portion of OSP's suggested evaluations, the challenged Statute will not come into play at all. In other words, the validity of the Statute and its potential impact on OSP will become relevant to OSP only after a determination has been made in OSP's tax assessment appeals now pending in Rhode Island state court.

In this declaratory action, OSP has requested that the Court declare unconstitutional a Rhode Island statute, the application of which has not yet happened and may never happen. At the same time, proceedings involving the parties to this suit are already pending in Rhode Island state courts and a determination as to the Statute's applicability may occur within a few months. Although the question of the Statute's validity is primarily a legal one, "the concrete factual situation placing the facial constitutionality of the [Statute] at issue does not yet exist." Operation Clean Government v. Rhode Island Ethics Com'n, 315 F.Supp.2d 187, 195-96 (D.R.I. April 28, 2004). Accordingly, the Court finds that determining the Statute's constitutionality before its enforcement has even been attempted amounts to rendering an advisory opinion. Moreover, the Statute's enforceability may become an issue in the

pending state court proceedings in a matter of months and a determination at this time is both unnecessary and premature.

As to OSP's assertion of hardship, without a determination (which is anticipated within the next four months) of whether and to what extent the Statute may even be applicable to OSP's state-raised claims against the Town, no immediate, direct harm has been asserted in this declaratory action. Moreover, OSP itself suggests that "this Court could wait until the completion of the [Rhode Island state court] trial before" determining the merits of this case on cross-motions for summary judgment. OSP's Obj. at 14 (Dkt. No. 18). OSP's contention that it is suffering an immediate hardship because the Town, in reliance on the Statute's pre-judgment interest cap, has refused to mediate the tax appeals, <u>see</u> Complaint at ¶ 38, is speculative and unsupported. Even if taken at face value, OSP's contention constitutes, at most, an assertion of an indirect injury, which provides insufficient grounds to deny the Town's motion to dismiss the Complaint for lack of ripeness. In sum, the Court finds that the Statute, which has not yet had, and may never have, a direct effect on OSP's claims against the Town, does not inflict a present hardship on OSP sufficient to support a finding of ripeness.

## Conclusion

For the reasons stated herein, the Town's motion to dismiss

OSP's declaratory judgment action is GRANTED.

SO ORDERED.


/s/ Mary M. Lisi

Mary M. Lisi
United States District Judge

August 14, 2015